# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES CRANE,<br><br>    Plaintiff,<br><br>v.<br><br>JAMES A. YATES, et al.,<br><br>    Defendants.<br>_____ / | CASE NO. 1:10-cv-02373-LJO-GBC (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Doc. 73<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

**Findings and Recommendations**

**I. Procedural Background**

On December 21, 2010, Plaintiff James Crane ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging Defendant Aguirre ("Defendant") dumped Plaintiff out of his wheelchair. Doc. 1. On July 6, 2011, Plaintiff notified the Court of his willingness to proceed on the cognizable claim against Defendant for Eighth Amendment excessive force. Docs. 11, 12.

On August 9, 2012, Defendant filed a motion for summary judgment, contemporaneously with a notice as to how Plaintiff must oppose the motion in order to avoid dismissal, pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) and *Woods v. Carey*, 684 F.3d 934, 936 (9th Cir. 2012). Doc. 31. On September 10, 2012, Plaintiff filed an opposition to the motion for summary judgment, declaration, and statement of disputed and undisputed facts. Docs. 37-40. On September 13, 2012, Plaintiff filed a motion to file a supplemental opposition to the motion for summary judgment concurrently with filing his supplemental opposition. Doc. 42. On September 17, 2012,

1  Defendant filed a reply to Plaintiff's original opposition. Doc. 44. On October 1, 2012, Defendant
2  filed a statement of non-opposition to Plaintiff's motion to file a supplemental opposition
3  concurrently with filing a supplemental reply. Docs. 47, 48. On October 4, 2012, the Court granted
4  Plaintiff's motion to file a supplemental opposition to the motion for summary judgment. Doc. 52.

## II. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party:

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

//
//

## III. Undisputed Facts and Plaintiff's Declaration in Opposition of Motion for Summary Judgment

At the time relevant to this case, Plaintiff was an inmate with wheelchair user status in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at Pleasant Valley State Prison ("PVSP"). Compl. at 5, 7, Doc. 1; UF No. 1, Docs. 31-2, 39. At all times relevant to this case, Defendant Aguirre was a correctional officer assigned to PVSP. Compl. at 6, Doc. 1; UF No. 1, Docs. 31-2, 39.

On the morning of September 3, 2009, the tower observation officer ordered the inmates on Facility C yard to return to their buildings. UF No. 2, Docs. 31-2, 39. The inmates were ordered to return to their buildings because a large number of them were loitering in front of the closed medical clinic. *Id.* at UF No. 3. Defendant Aguirre walked toward the inmates that were standing in front of the medical clinic and ordered them to return their buildings. *Id.* at UF No. 4. Plaintiff told Defendant he was there for a toothache and had sought permission. Pl. Decl. Mot. Summ. J. at 3, Doc. 38. Plaintiff denies that he refused to comply with Aguirre's orders, saying that he had a toothache. Pl. UF No. 5, Doc. 39. Plaintiff denies that Aguirre told him that he could return just before 8 a.m., when the medical clinic opened. *Id.* at Pl. UF No. 6.

Defendant used profane language against Plaintiff. Pl. Decl. Mot. Summ. J. at 3, Doc. 38. Plaintiff then began to leave the ADA C-Facility medical area and go around Defendant toward Plaintiff's building where he is housed. *Id.* At this time, Defendant Aguirre grabbed Plaintiff's wheelchair and began to jerk and push Plaintiff in an erratic violent manner. *Id.* Then Defendant Aguirre spun Plaintiff around, dragging Plaintiff's wheelchair. *Id.* When Plaintiff engaged the wheelchair brake in an effort to stop Defendant Aguirre, Defendant jerked and pulled Plaintiff's wheelchair even harder - causing Plaintiff to be dumped out of his wheelchair. *Id.* Plaintiff denies that when Aguirre tried to pull the wheelchair backward, Plaintiff lowered himself to the ground. Pl. UF No. 9, Doc. 39. Plaintiff tried to get out of the way, Defendant Aguirre pushed the wheelchair toward Plaintiff, striking him while on the ground. Pl. Decl. Mot. Summ. J. at 3, Doc. 38. Plaintiff denies that because he refused to sit in his wheelchair, Aguirre decided to return Plaintiff's wheelchair to his cell, and come back with a gurney and additional officers to restrain and transport

1  Plaintiff back to his building. Pl. UF No. 11, Doc. 39. As Defendant Aguirre began pushing the
2  wheelchair back toward Plaintiff's building, Sergeant Wilson approached. UF No. 12, Docs. 31-2,
3  39. Sergeant Wilson asked Plaintiff whether he would sit in the wheelchair if Aguirre would return
4  with it. *Id.* at UF No. 13. Crane agreed to do so, and Aguirre returned with the wheelchair. *Id.* at UF
5  No. 14. Wilson had another officer push Crane back to his building in his wheelchair. *Id.* at UF No.
6  15. Plaintiff filed a grievance against Officer Aguirre for dumping him from his wheelchair, and then
7  striking him with it. *Id.* at UF No. 18. In October 2009, Sergeant Martin investigated Plaintiff's
8  grievance. *Id.* at UF No. 19. As part of Martin's investigation, he interviewed Plaintiff. *Id.* at UF No.
9  20. During his interview of Plaintiff, Martin showed him a DVD containing video footage of the
10 incident from the yard camera. *Id.* at UF No. 21. Plaintiff denies that the video showed that Plaintiff
11 lowered himself to the ground from the wheelchair and Aguirre did not strike him with it. Pl. UF No.
12 22, Doc. 39. Plaintiff denies that upon seeing the footage, he recanted his allegations. *Id.* at Pl. UF
13 No. 23.

## IV. Analysis

### A. Eighth Amendment Excessive Force

#### 1. Genuine Dispute of Material Fact

17  "[W]henever prison officials stand accused of using excessive physical force in violation of
18 the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied
19 in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."
20 *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986);
21 *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

22  Defendant contends that he did not use any force on Plaintiff. *See* Aguirre. Decl. at 2, Doc.
23 31-3. Plaintiff submitted a declaration, stating he began to leave the ADA C-Facility medical area
24 and go around Defendant toward Plaintiff's building where he is housed when Defendant Aguirre
25 grabbed Plaintiff's wheelchair and began to jerk and push Plaintiff in an erratic violent manner. Pl.
26 Decl. Mot. Summ. J. at 3, Doc. 38. Then Defendant Aguirre spun Plaintiff around, dragging
27 Plaintiff's wheelchair. *Id.* When Plaintiff engaged the wheelchair brake in an effort to stop Defendant
28 Aguirre, Defendant jerked and pulled Plaintiff's wheelchair even harder - causing Plaintiff to be

dumped out of his wheelchair. *Id.* Plaintiff tried to get out of the way, Defendant Aguirre pushed the wheelchair toward Plaintiff, striking him while on the ground. *Id.*

From Plaintiff's declaration, the Court cannot find that there is no genuine dispute of material fact as to whether Defendant used excessive force on Plaintiff. Therefore, Defendant's motion for summary judgment should be denied, without prejudice.

**2. Qualified Immunity**

Defendant contends that he is entitled to qualified immunity. Def. Mot. Summ. J. at 5, Doc. 31-1. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, one inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 227 (2009) ("*Saucier* procedure should not be regarded as an inflexible requirement"). The other inquiry is whether the right was clearly established. *Saucier*, 533 U.S. at 201. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." *Id.* "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202. In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Here, based Plaintiff's declaration, Defendant is not entitled to qualified immunity. Drawing all reasonable inferences in favor of Plaintiff as the non-moving party, there is a genuine dispute of material fact as to Plaintiff's claims for excessive force. Essentially, although the parties agree that the tower observation officer ordered the inmates on Facility C yard to return to their buildings, Plaintiff states he had permission to be at the medical building. UF No. 2, Docs. 31-2, 39; Pl. Decl.

Mot. Summ. J. at 3, Doc. 38. In addition, Plaintiff states he did not disobey a direct order from Defendant Aguirre. Pl. UF No. 5, Doc. 39. Moreover, even if Plaintiff had disobeyed an order, Plaintiff alleges Defendant Aguirre dumped Plaintiff from his wheelchair and struck him with it. UF No. 18, Docs. 31-2, 39. Finally, Plaintiff denies that he recanted his allegations upon viewing the video from the incident.[1] Therefore, when construing the facts alleged in the light most favorable to Plaintiff, the undersigned cannot recommend finding qualified immunity. *Harlow*, 457 U.S. at 818; *Saucier*, 533 U.S. at 201.

### V. Conclusion and Recommendation

Based on the foregoing, it is HEREBY RECOMMENDED that Defendant's motion for summary judgment be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   October 22, 2012

UNITED STATES MAGISTRATE JUDGE

---

[1] In Defendant's supplemental reply, defense counsel submitted a declaration stating that Defendant does not have possession, custody, or control of the video. Def. Supp. Reply Mot. Summ. J., Lien Decl. at 1-2, Doc. 47-1. Counsel asked M. Jiminez, Executive Officer of Investigative Services Unit ("ISU") at Pleasant Valley State Prison ("PVSP"), to conduct a diligent search for the video. *Id.* at 2. Defense counsel also submitted a declaration by Jiminez. Def. Supp. Reply Mot. Summ. J., Jiminez Decl. at 1-2, Doc. 47-1. Jiminez informed defense counsel that PVSP staff searched for the incident video recording in the three areas where it might be kept—the video evidence archive of ISU, the appeals department, and the incident management files of C-yard—but were unable to locate the DVD. *Id.*

Page 6 of 6